lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHARON SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-4129-JAR |
| ) | |
| PETER GEREN, ) | |
| ACTING SECRETARY ) | |
| DEPARTMENT OF THE ARMY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Sharon Simmons brings this action against her employer, Peter Geren, Secretary of the Army, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). This matter is before the Court on defendant's Motion for Summary Judgment (Doc. 19). For the reasons explained in detail below, defendant's motion is granted.

**I.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[1] Fed. R. Civ. P. 56(c).

the light most favorable to the nonmoving party.[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[2] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[3] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[4] *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5] *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[7] *Anderson*, 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[8] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[9] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10] Rule 56(e) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II.     Uncontroverted Facts

As defendant points out, plaintiff's response does not comply with D. Kan. Rule 56.1. In response to many of defendant's assertions of fact, plaintiff states that the fact is admitted or

---

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[10]*Adams*, 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(e).

[12]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

3

denied, and goes on to state additional facts in the same paragraph.[15] D. Kan. Rule 56.1(b)(2) requires the party opposing summary judgment to set forth additional facts in separately numbered paragraphs, supported by references to the record, in the manner set forth by D. Kan. Rule 56.1(a). Further, plaintiff fails to provide record support for many assertions. Defendant also asserts facts for the first time in its argument portion of its brief in support of summary judgment.[16] The Court admonishes both parties for failure to comply with the rules and ignores any assertions that are not properly asserted or supported.

Consistent with the well-established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to the nonmoving party. On July 29, 2002, plaintiff, who is African-American, began her employment with the United States Army at Fort Riley, Kansas, as a Human Resources Assistant, in the Personnel Processing Center, occupational code 0203, pay plan GS, grade level 4 ("GS-203-04"), with an adjusted basic pay totaling $23,549,00. On September 8, 2002, plaintiff was reassigned to a position titled Personnel Actions Clerk ("Clerk"), GS-203-04, in the Southwest Civilian Personnel Operations Center ("SWCPOC"), Branch 5. On September 7, 2003, after the required 52 weeks of work experience, plaintiff was promoted to a GS-203-05, and her adjusted basic pay increased to $27,409.00.

On October 29, 2003, Vacancy Announcement No. SWEM03485485 was published. This announcement sought applications for a Human Resources Specialist ("Specialist"), occupational code 201, pay plan GS, grade level 5/7/9/11 ("GS-201-5/7/9/11"). Plaintiff applied

---

[15]*See, e.g.,* Doc. 21, ¶¶ 5, 6, 12, 14, 17.

[16]*See, e.g.*, Doc. 20 at 21, discussing qualifications of other unsuccessful candidates.

for the Specialist position.

The Vacancy Announcement for the Specialist position was published on a government website, and applications were submitted and processed electronically. Plaintiff applied for the position through a link found at that website. When plaintiff electronically submitted her application for the Specialist position, her resume, which was stored in a data base referred to as RESUMIX, was electronically linked to her application. Plaintiff did not update her RESUMIX resume after she was promoted from a GS-203-04 to a GS-203-05 and before applying for the Specialist position in October 2003. Accordingly, when plaintiff applied for the Specialist position, her resume indicated she was still at the lower position, and described her work activity as clerical in nature.

The information included in plaintiff's RESUMIX resume linked to her application, and viewed by Branch 4 in evaluating her application, described plaintiff's work activity as a GS-203-04 Clerk as follows:

> Provides clerical support to the CPAC with responsibility of processing recurring personnel actions for Wage and GS positions. Reviews RPA (Request for personnel action) for agency code, regulatory authority and the existence of supporting documents. Reviews OPF for entitlements, benefits, pay setting. Codes SF 50's, inputs data into work tracking system to generate Notification of Personnel Actions. Retrieves data from various information sources, both manual and electronic to process appointments, separations, promotions, LWOP. Use initiative and judgment to apply directives, oral instructions regarding staffing policies and regulations. Coordinates with CPAC personnel to identify gaps or inconsistencies in SCDs (Service computation dates), creditable military service WGI (Within grade increase), etc. Use word processing to produce forms, reports and correspondence. Receives, answers telephone calls (fax, e-mail) to verify report or exchange information related to the personnel record. Provides technical advice and assistance to CPAC

personnel in resolution of recurring personnel problems.

The position description for a GS-203-04 Clerk states that it is a "developmental position" and describes the Clerk's duties as "developmental assignments" performed "under closer than normal supervision," which "become progressively more difficult until the full performance level is reached."

Per the Vacancy Announcement, individuals who applied for the Specialist position at the GS-05 level were required to have three years of general experience, one of which was at least equivalent to the GS-04 grade level, or a four year course of study leading to a bachelor's degree, or an equivalent combination of experience and education. The Office of Personnel Management ("OPM") Qualification Standards for the position being advertised defined the general experience requirements as follows:

> For positions for which individual occupational requirements do not specify otherwise, general experience is 3 years of progressively responsible experience, 1 year of which was equivalent to at least GS-4, that demonstrates the ability to:
>
> 1. Analyze problems to identify significant factors, gather pertinent data, and recognize solutions;
>
> 2. Plan and organize work; and
>
> 3. Communicate effectively orally and in writing.
>
> Such experience may have been gained in administrative, professional, technical, investigative, or other responsible work. Experience in substantive and relevant secretarial clerical, or other responsible work may be qualifying as long as it provided evidence of the knowledge, skills, and abilities (KSA's) necessary to perform the duties of the position to be filled. Experience of a

general clerical nature (typing, filing, routine procedural
processing, maintaining records, or other nonspecialized tasks) is
not creditable. Trades or crafts experience appropriate to the
position to be filled may be creditable for some positions.

Consistent with the OPM Qualification Standards, the SWCPOC had a policy of not crediting GS-203-04 Clerk experience as general experience when considering applications for Specialist positions like the one in question because it is a trainee level position and the duties are primarily routine and clerical. On or before December 1, 2003, Branch 4 confirmed that other branches in the SWCPOC also applied the policy of not crediting GS-203-04 Clerk experience as general experience when considering applications for Specialist positions.

Applications for the Specialist position were evaluated and rated by Teena Figueroa, Human Relations Specialist, SWCPOC, Branch 4. Figueroa, who is African-American, was the person responsible for determining which applicants were qualified for the Specialist position and preparing the referral list to be used by the selecting official. On December 2, 2003, Figueroa sent the list of qualified applicants to the selecting official. Plaintiff's name was not included on the list. Figueroa, who was not well acquainted with plaintiff, determined that plaintiff was unqualified for the Specialist position and did not refer plaintiff for consideration because her RESUMIX resume did not reflect the general experience required for the job. Figueroa avers that she evaluated plaintiff's application in the same manner as all other applicants, and race was not a factor in her decision that plaintiff did not meet the minimum qualifications for the Specialist position.

One hundred ten applicants were determined to be qualified for the Specialist position and thirty-seven of those people are African-American. Twenty-eight applicants were

7

determined to be unqualified for the Specialist position.  Of the twenty-eight, fifteen are Caucasian/White, seven are African-American, three are Hispanic, and three are of an unspecified background.

The selecting official for the Specialist position was Cindy Coers.  On December 12, 2003, Coers selected Mary Botello to fill the Specialist position based on her experience in higher level processing of personnel actions as a Team Leader, her experience working with RESUMIX, her experience working in the Defense Civilian Personnel Data System, her knowledge of the Priority Placement Program, her goal of continuing her education, and her training and organizational skills.  At the time of her selection, Botello was the "Team Leader" of the four Clerks (code 203 employees) in SWCPOC Branch 5, which included plaintiff.  Coers avers that a comparison of Botello's resume and the resume submitted with plaintiff's application for the Specialist position indicates that Botello was more qualified for the position than plaintiff, and that race was not a factor in any decision she made with respect to the filling of the Specialist position.

The Specialist position was the first vacancy announcement that Figueroa worked on as a Human Resources Specialist.  Plaintiff learned that she was not referred when she checked information posted on a website that tracks the status of jobs for which an employee has applied.  Plaintiff was informed on December 5, 2009 that she was not referred because her resume did not reflect the required qualifications as defined in the OPM handbook, and also because she did not meet the OPM's time in grade requirements.   Shari Mayhew, who is a Supervisory Human Resources Specialist, Branch 4, assisted Figueroa in drafting a response to an inquiry from plaintiff concerning her non-referral.  That response, sent on December 11, 2003, mistakenly

8

stated plaintiff was found to have lacked the specialized, rather than general, experience required for the Specialist position. In a subsequent email to plaintiff, Mayhew explained this mistake and advised her that the reason she was not referred for the Specialist position was her lack of general experience.

An occupational code 203 position is a support position. These employees provide support to the Human Resource Specialists, who are occupational code 201 employees. Specialist positions require greater technical knowledge than is required of the occupational code 203 positions. At all times relevant to this action, plaintiff worked in an occupational code 203 position, SWCPOC, Branch 5. There were four occupational code 203 employees in Branch 5, two of whom are African-American.

Prior to applying for the Specialist position at issue, plaintiff applied and was mistakenly named in the referral list for a similar position in another Branch. Neither Figueroa nor anyone else working at Branch 4 had anything to do with this decision.

At all times relevant to the instant action, there were five Specialists (occupational code 201 employees) in SWCPOC Branch 5, and two of those Specialists are African-American. The Clerks are trained by Specialists. The Specialist assigned to train plaintiff was Gail Barnes, who is African-American. Plaintiff suffered no adverse consequences related to the sufficiency of her training or the timeliness of her performance evaluations.

Sometime after her application for the Specialist position was disqualified, plaintiff updated her resume to reflect her current GS-05 grade, her training, education and experience as well as the duties she performed as part of her previous positions.

Plaintiff does not have any factual evidence that the challenged decision was based upon her race. Plaintiff cannot identify any witnesses who will testify in support of her claim of race discrimination.

**III.     Discussion**

Plaintiff claims that defendant failed to promote her to the Specialist position on the basis of her race. As plaintiff has no direct evidence of discrimination, her claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[17] Under this familiar framework, plaintiff has the burden of establishing a prima facie case of discrimination.[18] If she establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action.[19] If defendant meets this burden, summary judgment against plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether defendant's reasons are pretextual.[20] Although the burden of production shifts back and forth between the parties, the ultimate burden of persuasion remains at all times with plaintiff.[21]

---

[17] 411 U.S. 792 (1973).

[18] *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

[19] *Id*.

[20] *Id*.

[21] *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

*Prima Facie Case*

Establishing a prima facie case is "not an onerous burden," and gives rise to an inference of discrimination by eliminating the most common nondiscriminatory reasons for plaintiff's treatment.[22] Plaintiff alleges that defendant failed to promote her to the Specialist position because of her race. To establish a prima facie case for failure to promote under Title VII, a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the promotion; (3) she was not promoted; and (4) the position for which she was not hired was filled or remained open.[23] Plaintiff is not required to show that the position was filled by someone outside the plaintiff's protected class.[24]

Defendant argues that plaintiff cannot establish that she was qualified for the Specialist position because her outdated resume did not reflect qualifying general experience. Defendant notes that plaintiff's updated resume substantially altered her training and education experience as well as the duties she had performed in her previous job positions. Plaintiff responds that, even with her outdated resume, she was qualified for the position. The Court notes that "[t]he relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought."[25] Implicit in defendant's argument is that, had defendant submitted her correctly

---

[22]*Id*. at 254.

[23]*Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000).

[24]*Id*.

[25]*E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).

11

updated resume, she may have been qualified for the Specialist position. Thus, the Court assumes without deciding that plaintiff has met her prima facie burden of presenting some evidence that she could have performed the Specialist position.

### *Legitimate Reason*

Defendant states that it did not refer plaintiff for the Specialist position because she did not have the qualifying general experience. Defendant proffers the declarations of Coers and Mayhew stating that, consistent with the OPM Standards, the SCPOC had a policy of not crediting GS-203-04 Clerk experience as general experience when considering applications for Human Resources Specialist positions like the one in question because it is a trainee-level position and the duties are primarily routine and clerical. Defendant has met its burden to articulate facially nondiscriminatory reasons for the adverse employment action.

### *Pretext*

Under the third step of the *McDonnell Douglas* framework, the burden shifts back to plaintiff to show that defendant's stated reasons are merely a pretext to hide racial discrimination.[26] Defendant asserts that it is entitled to summary judgment because plaintiff has produced no evidence from which a jury could conclude that the real reason for plaintiff's non-selection for the Specialist position was race. The relevant issue is not whether the stated reasons for discrimination were wise, fair or correct, but whether defendant honestly believed in those reasons and acted in good faith.[27] In examining the issue, a court must "look to the facts as

---

[26]*Id*. at 1230.

[27]*Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

they appear to the person making the decision" regarding the adverse action.[28] It is not the court's role to second guess an employer's business judgment.[29]

A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[30] "While this burden is not onerous . . . it is also not empty or perfunctory."[31] A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, *i.e.* unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff.[32] In addition, in the context of a discrimination case, evidence of pretext may include whether plaintiff was treated differently from similarly-situated employees.[33]

As evidence of pretext, plaintiff avers that defendant's explanation for why she was not referred for the Specialist position is somehow inconsistent with the OPM standards. Plaintiff argues that the language of the OPM standards only require an applicant for a GS-05 Specialist

---

[28]*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000).

[29]*Stover*, 382 F.3d at 1076.

[30]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

[31]*Id.* at 1323-24.

[32]*Kendrick*, 220 F.3d at 1230.

[33]*See Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001); *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 n.6 (10th Cir. 2000).

position to have three years of work experience, one of which is at the GS-04 level. Defendant's witnesses disagree and have testified that simply holding any GS-04 position for one year is not all that is required of an applicant for a GS-05 Specialist position. Defendant's evidence establishes that experience of a general clerical nature is not creditable when evaluating applications for a Specialist position. There was nothing in plaintiff's resume submitted with her application indicating that she was performing duties that demonstrated the skills and abilities necessary to perform the Specialist position, or that defendant handled her application in a manner inconsistent with the OPM standards and other policies.

Plaintiff also argues that Branch 4's responses to her inquiries about the referral are evidence of pretext as they demonstrate an attempt to cover up race discrimination. Plaintiff offers no evidence that these responses were anything more than mistakes, and the mishandling of plaintiff's inquiries was due in large part to Figueroa's inexperience in dealing with such matters.

Plaintiff has offered her own evaluation of her skills and abilities, and asserts that her resume reflects the experience necessary for the position. However, it is the employer's perception of the plaintiff's abilities that is relevant, not the plaintiff's view of his own qualifications.[34] Defendant's witnesses aver that based upon the resume on file at the time she applied for the Specialist position, plaintiff did not meet the minimum qualifications for referral. Even if Figueroa's assessment of plaintiff's abilities was "incorrect, this does not show pretext unless there is reason to believe the employer failed to exercise its business judgment in good

---

[34] *Kendrick*, 220 F.3d at 1231.

faith."[35] Plaintiff claims that these witnesses testified untruthfully about the policy of not crediting GS-04 Clerk experience as general experience when considering applications for specialist positions, because she was unaware of the policy. Simply doubting the veracity of defendant's witnesses, without more, does not establish pretext.

Nor does plaintiff's allegation that Coers "was very much aware of the work plaintiff was doing," show pretext. While Coers' familiarity with plaintiff's work may have helped plaintiff if her name had been included on the referral list, plaintiff's name was not on the list and Coers was required to make her selection from the names on the list prepared by Figueroa. Moreover, the person selected for the position, Botello, was well-qualified for the position. There is no evidence that plaintiff's qualifications were plainly or demonstrably superior to those of Botello, who was the Team Leader of the four clerks working in Branch 4, including plaintiff.

In order to survive summary judgment, plaintiff must demonstrate that defendant acted with discriminatory intent. Plaintiff has put forth no evidence to demonstrate that defendant's reason for not referring her for the Specialist position was false or a pretext for discrimination. Title VII does not protect an employee against unfair employment decisions, only decisions based on discriminatory animus. Defendant can make an incorrect decision, and if that decision is based upon a good faith belief with no discriminatory influences, then the Court will not question the validity of the reasons. In this case, defendant made its decision based on the outdated resume plaintiff submitted with her application. Plaintiff has provided no evidence that the decision not to refer her for the position, or to hire Botello instead of her, was motivated by race. Accordingly, plaintiff's claim for race discrimination fails.

---

[35]*Wiemer v. Learjet, Inc.*, 113 F. App'x 887, 889-90 (10th Cir. 2004) (citation omitted).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 19) is GRANTED.  Defendant's Unopposed Motion for Modification of the Pretrial Order (Doc. 23) is DENIED.

IT IS SO ORDERED.

Dated:  October 20, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE